UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOSEPH LAHOUD,

                       Plaintiff,                    17-cv-1211 (PKC)

        -against-                      MEMORANDUM
                                                                  AND ORDER

DOCUMENT TECHNOLOGIES LLC, JOHN
DAVENPORT JR., in his individual and
professional capacities, DOUGLAS GERSNTER,
in his individual and professional capacities, and
LISA DADY, in her individual and professional
capacities,

                       Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Joseph Lahoud brings claims of age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § § 621, et seq. (the "ADEA"), the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y. City Administrative Code § 8-101 et seq. ("NYCHRL") and the Connecticut Fair Employment Practices Act, Connecticut General Statute §§ 46a-60, et seq. ("CFEPA"). According to the Complaint, Lahoud's supervisors mocked and belittled him on the basis of his age, and then terminated him in retaliation three months after his attorney sent them a letter identifying discriminatory conduct.

        In 2005, Lahoud entered into an employment agreement that contains a forum selection clause and an arbitration clause. Relying on that forum selection clause, defendants Document Technologies LLC ("DTI"), John Davenport Jr. and Lisa Dady move to dismiss the complaint on the basis of improper venue pursuant to Rule 12(b)(3), Fed. R. Civ. P. (Docket #

34.) Alternatively, they move to compel arbitration. (Docket # 34.) Defendant Douglas Gerstner has filed a separate motion raising the same arguments. (Docket # 37.)

For the reasons that will be explained, the Court concludes that Lahoud consented that the venue for his claims "shall rest exclusively in" the Superior Court of Fulton County, Georgia. Defendants' Rule 12(b)(3) motions are therefore granted. The Court does not reach defendants' motions to compel arbitration.

BACKGROUND.

### A. Overview of the Complaint.

While employed at DTI, Lahoud had the job title of Regional Director of Service Solutions. (Amended Complaint (the "Complaint") ¶ 21.) He alleges that in or around 2013, defendant Gerstner, to whom he reported, began to mock and belittle him in the workplace, calling him "fat and old" and "up there in age," while also encouraging him to retire. (Compl't ¶¶ 3, 27-36, 39-42.) At the time, Lahoud was seventy years old. (Compl't ¶ 37.)

Defendants Dady and Davenport allegedly followed Gerstner's example, and also encouraged Lahoud to retire. (Compl't ¶¶ 5-6, 58-69.) Dady suggested that Lahoud change jobs within the company, a move that Lahoud says would have required "a massive pay cut." (Compl't ¶ 62.) Lahoud alleges that Dady and Gerstner began to channel work away from him and toward his younger colleagues. (Compl't ¶¶ 63, 68.) At one point, Davenport, the company's CEO, told Lahoud that unless he retired, Dady would "begin writing him up," and that "at best, [Davenport] could 'buy him' another six months with DTI." (Compl't ¶ 6.)

In January 2016, Dady asked Lahoud whether he had "given any thought to retiring." (Compl't ¶¶ 59-60.) Lahoud responded that he wanted to remain with DTI. (Compl't ¶ 61.) After that conversation, Davenport called Lahoud and told him that he would not let

anyone "push you out." (Compl't ¶ 70.) However, in a July 2016 conversation, Davenport raised the issue of Lahoud's retirement, stating that Dady had "no confidence" in Lahoud and that DTI would give him a generous retirement package. (Compl't ¶¶ 73-80.)

On July 27, 2016, Lahoud's attorney wrote to DTI describing the company's alleged discriminatory and retaliatory conduct. (Compl't ¶ 81.) On October 12, 2016, DTI placed Lahoud on a performance improvement plan, which included goals that the Complaint calls "unrealistic and virtually impossible . . . ." (Compl't ¶ 82.) Lahoud filed a charge of discrimination with the Equal Employment Opportunity Commission and Connecticut Human Rights Office on October 20, 2016. (Compl't ¶ 83.) DTI terminated Lahoud's employment on January 5, 2017. (Compl't ¶ 84.)

Lahoud brings claims of age discrimination and retaliation under the ADEA solely against DTI. (Compl't ¶¶ 89-96.) He brings claims of age discrimination and retaliation under the NYSHRL and the NYCHRL against all defendants. (Compl't ¶¶ 97-114.) With leave of the Court, and while these motions to dismiss were pending, Lahoud filed an Amended Complaint on July 7, 2017. (Docket # 51.) The amendment added claims of age discrimination and retaliation under the CFEPA against all defendants, but did not allege any new facts. (See id.) Because the defendants' motions are directed toward forum-selection and arbitration provisions in Lahoud's employment agreement with DTI, the amendment does not affect the consideration of defendants' motions, and their outcomes apply equally to the CFEPA claims.

B. Lahoud's Employment Agreement with DTI.

On February 28, 2005, Lahoud executed a Sales Representative Agreement (the "Agreement") with DTI. (Lario Dec. Ex. A.) Paragraph 20 of the Agreement states that the "parties acknowledge and agree" that they have had an opportunity to negotiate and prepare the

Agreement, and Lahoud "acknowledges that he has had the opportunity to consult legal counsel regarding the terms hereof." (Id.)

The defendants urge that the Complaint should be dismissed because the parties agreed to a forum-selection clause providing exclusive jurisdiction to the Superior Court of Fulton County, Georgia for all legal and equitable claims "arising out of or relating to" the Agreement. Alternatively, they seek to compel arbitration on all of Lahoud's claims.

Paragraph 21 of the Agreement is headed "Consent to Jurisdiction and Venue and Selection of Forum," and provides that jurisdiction and venue for claims under the Agreement "shall rest exclusively in" the Superior Court of Fulton County, Georgia. (Id.) It states in full:

> In regard to any action to enforce or interpret this Agreement, or otherwise arising out of or relating to this Agreement, each party (1) consents and submits to personal jurisdiction and venue in the Superior Court of Fulton County, State of Georgia (referred to as the "Court"); (ii) waives any and all objections to jurisdiction and venue in the Court; and (iii) waives any objection that the Court is an inconvenient forum. Each party further agrees that jurisdiction and venue concerning any legal or equitable action to enforce or interpret this Agreement, or otherwise arising out of this Agreement, shall rest exclusively in the Superior Court of Fulton County, State of Georgia, so that any such action shall be brought and defended in the Court.

(Id. ¶ 21.) The Agreement's arbitration clause states in full:

> With the sole exception of injunctive relief contemplated by Section 10 of this Agreement, and any injunctive relief sought by Company against Representative for breaches of Sections 2, 3, 4, 5, 6 and 7 of this Agreement, any controversy or claim arising out of any aspect of the relationship of the parties hereto will be settled by binding arbitration, pursuant to the Federal Arbitration Act, in the State of Georgia by a single arbitrator appointed by the American Arbitration Association from its panel of commercial arbitrators. The arbitrators will select the rules and procedures under which the arbitration will be conducted except that the parties agree that each party will be afforded the opportunity to conduct discovery by any method provided for under the Georgia Civil Practice Act. Judgment upon any arbitration award may be entered in any court

> having jurisdiction thereof, and the parties consent to the jurisdiction of the courts of the State of Georgia for this purpose.

(Id. ¶ 28)

RULE 12(b)(3) STANDARD.

Rule 12(b)(3), Fed. R. Civ. P., provides that a party may move to dismiss a complaint on grounds of improper venue. A defendant may enforce a forum selection clause by moving to dismiss, as opposed to filing a motion to transfer pursuant to 28 U.S.C. § 1404. TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 478 (2d Cir. 2011). No party urges that this action be transferred pursuant to section 1404, and because the forum selection clause provides for venue in a state court, such a transfer would likely not be possible. See, e.g., Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co., 2004 WL 421793, at *8 (S.D.N.Y. Mar. 5, 2004) ("Remands aside, federal courts do not have the power to transfer a case to a state court.") (Keenan, J.).

A Rule 12(b)(3) motion is scrutinized using the same standard applied to a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). "[I]n evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits . . . ." Martinez v. Bloomberg LP, 740 F.3d 211, 216 (2d Cir. 2014). Where a motion is based on the pleadings and affidavits, a plaintiff need only make out a prima facie case that venue is appropriate. Gulf Ins. Co., 417 F.3d at 355 (citing CutCo Indus. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)). "In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, we view all the facts in a light most favorable to plaintiff." Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007) (citing New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997)).

DISCUSSION.

### A. The Law Governing Forum Selection Clauses.

"'[F]orum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720-21 (2d Cir. 2013) (quoting TradeComet.com, 647 F.3d at 475). Federal law determines whether a forum selection clause is enforceable, even when a contract contains a choice-of-law provision. Martinez, 740 F.3d at 218. Thus, although the Agreement provides that it is governed by Georgia law (Agrm't ¶ 19), defendants' motions are determined by federal law.

The enforceability of a forum selection clause is determined by a four-step analysis. "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement." Phillips, 494 F.3d at 383. "The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." Id. "Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause." Id. "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. In the fourth step, the resisting party may rebut the presumption of enforceability "by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. at 383-84 (quoting M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 15 (1972)).

B. <u>The Forum Selection Clause Was Reasonably Communicated to Lahoud.</u>

"A forum selection clause may be deemed 'reasonably communicated' where the clause at issue appears as a standard section in the main body of an agreement signed by plaintiff and is phrased in both clear and unambiguous language." <u>Ujvari v. 1stdibs.com, Inc.</u>, 2017 WL 4082309, at *8 (S.D.N.Y. Sept. 13, 2017) (quotation marks and alterations omitted) (collecting cases) (Gardephe, J.).

The Agreement was executed by Lahoud and is dated February 28, 2005. (Lario Dec. Ex. A.) Lahoud signed his initials beneath the forum selection clause of paragraph 21. (<u>Id.</u>) Lahoud does not dispute that the provision was communicated to him.

The Court concludes that the forum selection clause was reasonably communicated to Lahoud. <u>Phillips</u>, 494 F.3d at 383.

C. <u>The Forum Selection Clause Is Mandatory, Not Permissive.</u>

"A forum selection clause is considered mandatory where: (1) 'it confers exclusive jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" <u>Global Seafood Inc. v. Bantry Bay Mussels Ltd.</u>, 659 F.3d 221, 225 (2d Cir. 2011) (quoting <u>Phillips</u>, 494 F.3d at 386).

The forum selection clause between Lahoud and DTI is mandatory. It governs "any action to enforce or interpret this Agreement, or otherwise arising out of or relating to this Agreement . . . ." (Agrm't ¶ 21.) It provides that each party "agrees that jurisdiction and venue concerning any legal or equitable action to enforce or interpret this Agreement, or otherwise arising out of this Agreement, <u>shall rest exclusively</u> in the Superior Court of Fulton County, State of Georgia, <u>so that any such action shall be brought and defended in the Court</u>." (<u>Id.</u>; emphasis added.)

Because the parties agreed that any legal or equitable action to enforce, interpret, or otherwise arising out of the Agreement "shall rest exclusively" in the Georgia court and "shall be brought and defended" there, the forum selection clause is mandatory, and not permissive. Phillips, 494 F.3d at 383.

### D.  The Claims and Parties of the Suit Are Subject to the Forum Selection Clause.

First, the Court concludes that plaintiffs' age discrimination claims are subject to the forum selection clause, and Lahoud does not argue otherwise.  The forum selection clause governs "any legal . . . action . . . arising out of this Agreement" or "relating to this Agreement." (Agrm't ¶ 21.)  Courts have concluded that forum selection clauses covering legal actions "arising" from or "relating" to an employment agreement apply to discrimination and retaliation claims.  See, e.g., Martinez, 740 F.3d 211 (enforcing forum selection clause that required plaintiff to bring discrimination claims in the United Kingdom); Slater v. Energy Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1330-31 (11th Cir. 2011) (clause similar to the one here "governs the entirety of the employment relationship" between the parties, including plaintiff's discrimination and retaliation claims).

Second, "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." Magi XXI, 714 F.3d at 723.  "[T]he relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." Id.; see also Citi Structure Const. v. Zurich Am. Ins. Co., 2015 WL 4934414, at *3 (S.D.N.Y. Aug. 18, 2015) (party that was closely involved in a transaction could enforce a forum-selection clause even though it was a non-

signatory to the agreement) (Abrams, J.). As described in the Complaint, Gerstner was Executive Vice President of Sales at DTI during the relevant period, Davenport was the company's CEO and Didy was Lahoud's immediate supervisor, with the title President of Management Solutions. (Compl't ¶¶ 3, 5, 6.) As officers of DTI, Gerstner, Davenport and Didy had a relationship to DTI that is "sufficiently close" to invoke the Agreement's forum selection clause.

The Court therefore concludes that the claims and parties of the suit are subject to the forum selection clause. Phillips, 494 F.3d at 383.

E. Lahoud Does Not Rebut the Presumption of Enforceability.

Lahoud's opposition is principally directed to the fourth enforceability prong, and argues that the forum selection clause is unenforceable as a matter of law. According to Lahoud, the Agreement's forum selection clause is in direct conflict with its arbitration clause, rendering both provisions unenforceable. (Opp. Mem. at 4-9.)

Whenever possible, a contract must be construed to harmonize its provisions and avoid rendering any language superfluous. See, e.g., Archer W. Contractors, Ltd. v. Estate of Pitts, 292 Ga. 219, 234 (2012) ("A contract must be considered as a whole with its provisions to be given effect and interpreted so as to harmonize with each other, and any construction that renders portions of the contract language meaningless is to be avoided."); Natixis Real Estate Capital Tr. 2007-HE2 v. Natixis Real Estate Holdings, LLC, 149 A.D.3d 127, 133-34 (1st Dep't 2017) (a contract must be read as a whole and construed to harmonize provisions while avoiding an interpretation that would leave any provision meaningless).

The Second Circuit has concluded that a broad forum selection clause can complement a broad arbitration clause, because, at a minimum, the forum selection clause can

reflect the parties' agreement to a particular venue to enforce or challenge an arbitral award. Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 283-85 (2d Cir. 2005), abrogated on other grounds, Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010). An arbitration clause and a forum selection clause will conflict when one specifically "supersede[s]" or "precludes" the other. See Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 764 F.3d 210, 215 (2d Cir. 2014)

As Lahoud observes, the forum selection clause requires that jurisdiction over "any legal or equitable action" to enforce, interpret, or arising out of the Agreement "shall rest exclusively" in Fulton County Superior Court. (Agrm't ¶ 21.) The arbitration clause requires that, with the exception of specified injunctive relief, "any controversy or claim" arising out of the parties to the Agreement "will be settled by binding arbitration" pursuant to the Federal Arbitration Act. (Agrm't ¶ 28.) According to Lahoud, no court could enforce these provisions "without arbitrarily rewriting the Agreement" because "requiring the parties to follow one provision would necessarily violate the other." (Opp. Mem. at 4-5.)

But a reading of the Agreement's plain language shows that the two provisions are complementary. The arbitration provision excludes certain categories of disputes from arbitration, including "injunctive relief contemplated by Section 10 of this Agreement, and any injunctive relief sought by Company against Representative for breaches of Sections 2, 3, 4, 5, 6 and 7 of this Agreement . . . ." (Agrm't ¶ 28.) That carves out from arbitration any injunctive relief directed to the Agreement's provisions concerning non-solicitation, non-competition, use of confidential information, trade secrets, and patent and copyright ownership. (Id.) It also excludes from arbitration Lahoud's promise to return to DTI any company materials in his possession at the time of his termination. (Id.) The arbitration clause also specifies: "Judgment

upon any arbitration award may be entered in any court having jurisdiction thereof, and the parties consent to the jurisdiction of the courts of the State of Georgia for this purpose." (Id.)

Reading the Agreement's forum selection clause alongside its arbitration clause shows an understanding between the parties that certain specified disputes are subject to litigation in the superior court of Fulton County, Georgia. It appears that other categories of disputes fall within the arbitration clause. Moreover, rather than superseding or nullifying the forum selection clause, the arbitration clause appears to incorporate it by stating that "the parties consent to the jurisdiction of the courts of the State of Georgia" for the purpose of enforcing any arbitration award. (Agrm't ¶ 28.)

A declaration submitted by Lahoud makes two additional assertions that bear on the presumption of enforceability. Lahoud notes that during the course of his employment, his "compensation was changed at least twice." (Lahoud Dec. ¶ 4.) He states, "I believe I had to sign documents acknowledging the change in compensation," and, "I do not believe these documents contained provisions similar to" the arbitration and forum selection clauses contained in the Agreement. (Lahoud Dec. ¶¶ 5-6.) Lahoud states that he no longer has access to these agreements. (Lahoud Dec. ¶ 6.) In reply, defendant Didy has submitted a declaration stating that Lahoud received a commission plan in 2016 that set forth "each variable level of commissions" for sales representatives, and that the plan did not contain provisions related to employment disputes. (Didy Dec. ¶ 4.) Defendant Gerstner has submitted a declaration stating that in 2010, Lahoud received a pay increase, and he attaches a copy of the relevant Employee Status Change Form. (Gerstner Dec. ¶ 4 & Ex. A.) The form approves Lahoud's pay increase, and does not include any provision related to venue, arbitrability or dispute resolution. (Gerstner Dec. Ex. A.)

Accepting Lahoud's assertions as true, there is no basis from which to conclude that any subsequent changes to his compensation altered the Agreement's forum selection clause.

Lahoud also states: "It also would be a financial hardship for me to travel to Georgia to pursue my discrimination and retaliation claims against DTI." (Lahoud Dec. ¶ 8.) In some instances, a party's severe financial hardship may defeat the presumption of enforceability. See Walker v. Carnival Cruise Lines, 107 F. Supp. 2d 1135, 1142 (N.D. Cal. 2000) ("the degree, combination, or cumulative effect of severe physical and economic disabilities" weighs against enforcing forum selection clause). The Second Circuit has viewed "unsupported statements" of financial hardship with skepticism. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995) ("Unsupported statements concerning financial difficulties are less than persuasive when made by someone who owns homes in Palm Beach and New York and who has just returned from an expensive foreign vacation."). Lahoud's brief and unelaborated claim of financial hardship does not defeat the presumption of enforceability.

The Court therefore concludes that Lahoud has not made a showing that enforcement of the forum selection clause would be "unreasonable or unjust," or that it is "invalid for such reasons as fraud or overreaching." Philips, 494 F.3d at 383-84.

F. The Court Does Not Reach Defendants' Motions to Compel Arbitration.

Because the Court concludes that the forum selection clause is enforceable and requires dismissal of Lahoud's complaint, it does not reach the defendants' alternative argument that Lahoud's claims must be resolved in arbitration.

CONCLUSION.

Defendants' motions to dismiss pursuant to Rule 12(b)(3) are GRANTED. (Docket # 34, 37.) The Clerk is directed to terminate the motions and to close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
November 14, 2017